## HULL v. A CARGO OF PIG-IRON, etc.[1]

*(District Court, S. D. New York. December 11, 1888.)*

DEMURRAGE — DEMURRAGE DAYS — COMPUTATION — CHARTER-PARTY — WORKING HOURS.

A steam-ship's charter provided as follows: "To be discharged as fast as steamer can deliver during ordinary working hours, all time on demurrage over and above the said lying days at 20 shillings per hour to be paid by charterers for any time expended over and above the said hours for loading and delivery." The vessel having been detained 2 days and 3 hours, or 51 hours after sufficient time to unload at the usual rate of 10 working hours per day had elapsed, *held,* that the demurrage days counted 24 hours per day, and not 10 hours only, and that the vessel was entitled to 51 hours' demurrage.

In Admiralty.

Action against the cargo of the steam-ship Hartington for demurrage.

*Butler, Stillman & Hubbard* and *Wilhelmus Mynderse,* for libelant.

*Knox & Woodward,* for claimant.

BROWN, J. The libel was filed to recover demurrage for the detention of the steamer Hartington at New York, in the discharge of a cargo of pig-iron, in July, 1887. The libelant claimed for 67 hours' detention at the rate of 20 shillings British sterling per hour. The charter provided as follows:

"The cargo to be loaded and discharged as fast as the steamer can load and deliver during ordinary working hours, according to the custom of the respective ports of loading and discharge, except in case of riot, or any hands striking work, or accident to the machinery which may impede the ordinary loading and discharging of the vessel. And all time on demurrage over and above the said lying days at 20/ per hour to be paid by the charterers for any time expended over and above the said hours for loading and delivery."

In the original charter the words "20/ per hour" are written in place of an erasure of "—— Pounds per day." The principal facts were admitted; it being stipulated that the vessel was ready to discharge after due notice at noon on the 12th of July; that afterwards, on the 13th, she went to Constable Hook on the charterer's request; that on the 14th only three hours were employed in discharging; that she began again at 8 o'clock on the 15th, when her discharge proceeded regularly until it was finished, as shown by the log, at 11 o'clock on the 22d; and that the "ordinary working hours, according to the custom of this port," in the discharge of vessels, is 10 hours per day, viz., from 7 to 12 in the forenoon, and from 1 to 6 in the afternoon. The litigation related solely to the construction of the above clause of the charter, and whether during the days that the vessel was detained, demurrage was to be charged for only 10 hours per day, or for 24 hours.

The actual time occupied in discharging was 66 hours. Had the discharge commenced when the vessel was ready after due notice, namely,

---

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

at 12 o'clock on the 12th of July, her discharge would have been completed (the 17th being Sunday) at 8 o'clock on the 20th. As she was in fact discharged at 11 o'clock on the 22d, the actual time of her detention beyond the time authorized by the charter was 2 days and 3 hours, or 51 hours, instead of 67 hours, as claimed in the libel. The defendants contend that the demurrage days are to be counted for 10 hours only, making, therefore, on this construction, only 23 hours' demurrage.

I cannot sustain the defendant's contention. The charter declares that the vessel shall be "on demurrage over and above the said lying days at 20, per hour for any time expended over and above the said hours for loading and delivery." The "said hours for loading and delivery" expired, as above stated, at 8 o'clock on the 20th of July. The charter does not say "demurrage to be paid for the ordinary working hours expended," but "for any time expended over and above the agreed hours." The "said lying days" referred to are the days necessary for loading or unloading, reckoned according to working hours; all after that are demurrage days. The distinction is between the contract "lying days" and the demurrage days, as Mr. Eadie, the experienced witness called by the defendant, points out. After the contract "lying days" had expired, every hour was or might be valuable to the ship. Upon the voyage every hour counts: and every day's detention, after the lay days have expired, is a loss of 24 hours to the ship in her subsequent voyage. Nothing but a clear expression in the charter ought, therefore, to reduce the vessel's time allowance below her actual loss of 24 hours per day. The adoption in the charter of compensation by the hour, instead of by the day, is sufficiently explained by the intent to reduce the ship's claim for detention to a more exact rule than a reckoning by days would give. Upon an allowance by the day the charterer would be obliged to pay for a whole day, though but an hour of it were consumed. Upon payment by the hour, the ship cannot claim for any part of the whole day of 24 hours beyond the hour of detention. The change in the printed form of the charter so as to pay by the hour, is a change in the charterer's interest; and in this case he gets the benefit of it, as I think, to the full extent designed.

Decree for 51 hours at 20 shillings per hour.